UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

LORA CARTHRON-KELLY,

                              Plaintiff,

v.                                              5:15-CV-0242
                                                (GTS/WBC)
COMMISSIONER OF SOCIAL SECURITY,

                              Defendant.
_____

APPEARANCES:                                    OF COUNSEL:

SEVERANCE, BURKO, SPALTER                        Louise R. Burko, ESQ.
& MASONE, P.C.
  Counsel for Plaintiff
16 Court St., Ste. 2400
Brooklyn, NY 11241

U.S. SOCIAL SECURITY ADMIN.                      David B. Myers, ESQ.
OFFICE OF REG'L GEN. COUNSEL – REGION II
  Counsel for Defendant
26 Federal Plaza – Room 3904
New York, NY 10278

William B. Mitchell Carter, U.S. Magistrate Judge,

## REPORT and RECOMMENDATION

        This matter was referred for report and recommendation by the Honorable Judge

Suddaby, Chief United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local

Rule 72.3(d).  (Dkt. No. 30.)  This case has proceeded in accordance with General

Order 18.

        Currently before the Court, in this Social Security action filed by Lora Carthron-

Kelly ("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the

Commissioner") pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are the parties' cross-

motions for judgment on the pleadings.  (Dkt. Nos. 23, 26, 29.)  For the reasons set forth below, it is recommended that Plaintiff's motion be denied and Defendant's motion be granted.

## I.    RELEVANT BACKGROUND

### A.    Factual Background

Plaintiff was born in 1959.  (T. 189.)  She completed a four year college.  (T. 130, 667.)  Generally, Plaintiff's alleged disability consists of neck and back impairments.  (T. 189.)  Her alleged disability onset date is May 9, 2009. (T. 667.)  She previously worked in nursing and housekeeping.  (T. 131, 668.)

### B.    Procedural History

On April 20, 2011, Plaintiff applied for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act.  (T. 196.)  Plaintiff's application was initially denied, after which she timely requested a hearing before an Administrative Law Judge ("the ALJ").  On January 29th and again on June 13, 2013, Plaintiff appeared before the ALJ, Edward I. Pitts.  (T. 79-123, 124-188.)  On July 31, 2013, ALJ Pitts issued a written decision finding Plaintiff not disabled under the Social Security Act.  (T. 57-78.)  On January 6, 2015, the Appeals Council ("AC") denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner.  (T. 1-7.)  Thereafter, Plaintiff timely sought judicial review in this Court.

### C.    The ALJ's Decision

Generally, in his decision, the ALJ made the following five findings of fact and conclusions of law.  (T. 62-71.)  First, the ALJ found that Plaintiff had not engaged in substantial gainful activity since April 20, 2011.  (T. 62.)  Second, the ALJ found that

Plaintiff had the severe impairments of degenerative disc disease of the cervical and lumbar spine as well as depression and post-traumatic stress disorder ("PTSD"). (*Id.*) Third, the ALJ found that Plaintiff did not have an impairment that meets or medically equals one of the listed impairments located in 20 C.F.R. Part 404, Subpart P, Appendix. 1. (T. 63.) Fourth, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform light work with additional non-exertional limitations. (T. 65.)[1] The ALJ found that Plaintiff could occasionally perform postural limitations, needed to avoid concentrated exposure to respiratory irritants and needed to avoid hazards such as unprotected heights, moving machinery and operating a motor vehicle. (*Id.*) In addition, the ALJ found that Plaintiff was limited to unskilled work. (*Id.*) The ALJ determined Plaintiff could have frequent social contact with supervisors and coworkers, but only occasional social contact with the general public on a face to face basis, she could have frequent social contact with the general public via indirect means such as the telephone or computer. (*Id.*) Fifth, the ALJ determined that Plaintiff was incapable of performing her past relevant work; however, there were jobs that existed in significant numbers in the national economy Plaintiff could perform. (T. 68-71.)

## II.    THE PARTIES' BRIEFINGS ON PLAINTIFF'S MOTION

### A.    Plaintiff's Arguments

---

[1]      Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time. 20 C.F.R. § 416.967(b).

Plaintiff makes four separate arguments in support of her motion for judgment on the pleadings.  First, Plaintiff argues the AC committed reversible error in failing to remand to the ALJ for consideration of the newly submitted surgical report evidence. (Dkt. No. 23 at 11-14 [Pl.'s Mem. of Law].)  Second, Plaintiff argues the ALJ's finding that Plaintiff could perform light work was not based on substantial evidence.  (*Id.* at 14-18.)  Third, Plaintiff argues the ALJ failed to properly incorporate relevant mental limitations from consultative examiner, Jeanne Shapiro, Ph.D., into the hypothetical question or RFC determination.  (*Id.* at 18-20.)  Fourth, and lastly, Plaintiff argues the ALJ failed to satisfy his burden of establishing that there was other work in the national economy that Plaintiff could perform.  (*Id.* at 20-21.)

**B.    Defendant's Arguments**

In response, Defendant makes three arguments.  First, Defendant argues the AC did not err in declining to remand the matter based on new and material evidence.  (Dkt. No. 26 at 5-10 [Def.'s Mem. of Law].)  Second, Defendant argues substantial evidence supported the ALJ's RFC finding.  (*Id.* at 10-20.)  Third, and lastly, Defendant argues substantial evidence supported the ALJ's step five finding.  (*Id.* at 21-22.)

**C.    Plaintiff's Reply Brief**

In reply, Plaintiff raises three arguments.  (Dkt. No. 29.)  Frist, Plaintiff argues whether or not the AC had or had not provided rationale, the issue remains that additional evidence may well have made a difference had it been reviewed by the ALJ. (Dkt. No. 29 at 1-2 [Pl.'s Reply Mem. of Law].)  Second, Plaintiff argues Defendant's arguments regarding Plaintiff's citations to relevant case law failed to address the issues

at hand.  (*Id.* at 2-4.)  Third, and lastly, Plaintiff argues Defendant is incorrect in her

assertion that the ALJ's determination at step five was proper.  (*Id.* at 4-5.)

## III.    RELEVANT LEGAL STANDARD

### A.    Standard of Review

A court reviewing a denial of disability benefits may not determine de novo

whether an individual is disabled.  *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v.

Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the

Commissioner's determination will only be reversed if the correct legal standards were

not applied, or it was not supported by substantial evidence.  *See Johnson v. Bowen*,

817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether

the ALJ applied correct legal principles, application of the substantial evidence standard

to uphold a finding of no disability creates an unacceptable risk that a claimant will be

deprived of the right to have her disability determination made according to the correct

legal principles."); *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*,

615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla,"

and has been defined as "such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct.

1420, 1427 (1971).  Where evidence is deemed susceptible to more than one rational

interpretation, the Commissioner's conclusion must be upheld.  *See Rutherford v.

Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial

evidence, a reviewing court considers the whole record, examining evidence from both

sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

### C. Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. *See* 20 C.F.R. § 416.920. The Supreme Court has recognized the validity of this sequential evaluation process. *See Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

> (1) whether the claimant is currently engaged in substantial gainful activity;
> (2) whether the claimant has a severe impairment or combination of
> impairments; (3) whether the impairment meets or equals the severity of the
> specified impairments in the Listing of Impairments; (4) based on a 'residual
> functional capacity' assessment, whether the claimant can perform any of
> his or her past relevant work despite the impairment; and (5) whether there
> are significant numbers of jobs in the national economy that the claimant
> can perform given the claimant's residual functional capacity, age,
> education, and work experience.

*McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014).

### IV.    ANALYSIS

### A. The ALJ's Weighing of the Medical Opinion Evidence and RFC Determination

The RFC is an assessment of "the most [Plaintiff] can still do despite [her] limitations." 20 C.F.R. § 416.945(a)(1). In formulating Plaintiff's RFC, the ALJ must assess all of the relevant medical and other evidence in the record. *Id.* at § 416.945(a)(3).

The relevant factors considered in determining what weight to afford an opinion include the length, nature and extent of the treatment relationship, relevant evidence which supports the opinion, the consistency of the opinion with the record as a whole, and the specialization (if any) of the opinion's source. 20 C.F.R. § 416.927(c)(1)-(6)[2]. The opinion of a treating source will be given controlling weight if it "is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." *Id.* at § 416.927(c)(2); *see Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015).

The following factors must be considered by the ALJ when deciding how much weight the opinion should receive, even if the treating source is not given controlling weight: "(i) the frequency of examination and the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the opinion; (iii) the opinion's consistency with the record as a whole; and (iv) whether the opinion is from a specialist." 20 C.F.R. § 416.927(c)(2)(i)-(iv). The ALJ is required to set forth his reasons for the weight he assigns to the treating physician's opinion. *Id.*, *see also* SSR

---

[2]    Effective March 27, 2017, 20 C.F.R. § 416.927 has been amended, as have other regulations and SSRs cited herein. Nonetheless, because Plaintiff's social security application was filed before the new regulations and SSRs went into effect, the Court reviews the ALJ's decision under the earlier regulations and SSRs.

96-2p, 1996 WL 374188 (July 2, 1996); *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir.

2000) (quoting *Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir.1998)).

> **i.)    Physical RFC Determination**

On July 24, 2011, Stanley Rabinowitz, M.D. performed a consultative

examination of Plaintiff. (T. 817-823.) Dr. Rabinowitz noted that Plaintiff complained of

low back and cervical pain, but took no medication. (T. 817.) Plaintiff reported her neck

pain radiated to her shoulders and limited her range of motion. (*Id.*)

On examination, Dr. Rabinowitz observed Plaintiff had no evidence of joint

inflammation, joint deformity, instability, contracture, or paravertebral muscle spasm.

(T. 819.) He noted her straight leg raise exam was negative in both the sitting and

supine positions. (*Id.*) Dr. Rabinowitz observed that Plaintiff's sensory examination was

normal; her reflex testing was normal; her motor strength testing was 5/5; and her gait

was intact. (*Id.*) Dr. Rabinowitz also completed range of motion form. (T. 821-823.)

Dr. Rabinowitz did not provide a medical source statement.

On September 22, 2011, Shakra Junejo, M.D. reviewed the record at the time

and provided a physical RFC assessment. (T. 200-204.) At the time of her review, the

record contained Dr. Rabinowitz's examination and a September 2009 MRI of the

lumbar spine. (T. 200-201.) Dr. Junejo opined that Plaintiff could occasionally lift and

carry 20 pounds and frequently lift and carry 10 pounds. (T. 201.) She opined Plaintiff

could stand and/or walk about six hours in an eight hour workday. (*Id.*) She opined

Plaintiff could occasionally perform postural limitations. (T. 201-202.) Dr. Junejo stated

that she based her opinion on the results of the physical examination performed by Dr.

Rabinowitz and the 2009 MRI. (T. 201.)

Plaintiff's orthopedic surgeon, Nikhil Thakur, M.D., was provided a medical source statement form. (T. 977-983.)  Dr. Thakur drew a line through each page requesting opinions regarding Plaintiff's specific limitations and instead wrote Plaintiff was "temporary totally disabled."  (*Id.*)  Dr. Thakur noted Plaintiff was awaiting spinal surgery at that time.  (T. 980.)

In formulating his physical RFC determination the ALJ afforded Dr. Junejo's opinion "significant weight."  (T. 67.)  The ALJ reasoned that Dr. Junejo was an acceptable medical source with program expertise and her conclusions were consistent with the longitudinal record.  (*Id.*)  The ALJ afforded Dr. Rabinowitz's findings "some weight."  (*Id.*)  The ALJ reasoned that although he did not provide limitations, he was an acceptable medical source and examined Plaintiff.  (*Id.*)  The ALJ noted that Dr. Rabinowitz's examination indicated good range of motion.  (*Id.*)  The ALJ afforded Dr. Thakur's statement no weight.  (T. 66-67.)  The ALJ reasoned that the statement was a temporary limitation and the doctor did not provide a function by function analysis or treatment notes in support of his opinion.  (T. 67.)

Plaintiff argues that the ALJ erred in relying on outdated medical evidence, based on an incomplete record, in formulating his RFC.  (Dkt. No. 23 at 14-18 [Pl.'s Mem. of Law].)  Specifically, Plaintiff argues that the ALJ erred in his reliance on Dr. Junejo's opinion because the doctor did not have before her Plaintiff's 2013 cervical MRI and treatment records from her pain management physicians, and the record at the time only address Plaintiff's degenerative disc disease.  (Dkt. No. 23 at 15 [Pl.'s Mem. of Law].)

To be sure, after Dr. Junejo provided her opinion, Plaintiff submitted additional medical evidence. However, the addition of subsequent medical records does not automatically render a prior opinion insufficient. *See Stottlar v. Colvin*, No. 5:15-CV-0340 (GTS), 2017 WL 972108, at *7 (N.D.N.Y. Mar. 10, 2017) ("a medical consultant's failure to consider the complete medical record does not necessarily compel rejection of the medical consultant's opinion"). While medical source opinions that are "conclusory, stale, and based on an incomplete medical record" may not be substantial evidence to support an ALJ finding, *Griffith v. Astrue,* No. 08-CV-6004, 2009 WL 909630, at *9 n. 9 (W.D.N.Y. March 31, 2009), this is not true where such opinions are supported by substantially similar findings in treatment notes and other opinions in the record, *Camille v. Colvin,* 104 F.Supp.3d 329, 343-344, (W.D.N.Y. May 19, 2015), *aff'd*, 652 F. App'x. 25 (2d Cir. 2016).

Although Dr. Junejo provided an opinion regarding Plaintiff's physical limitations prior to receiving the 2013 cervical MRI and pain management notations, her opinion was nonetheless supported by substantial evidence in the record. The evidence submitted was not so contrary to the ALJ's determination that remand would be warranted.

Plaintiff argues that Dr. Junejo did not have the benefit of the MRI or "over 140 pages of additional medical evidence." (Dkt. No. 23 at 16 [Pl.'s Mem. of Law].) Although Plaintiff asserts that the 2013 MRI and subsequent treatment notations warrant remand, Plaintiff does not explain how any of the records were contrary to Dr. Junejo's opinion or could be expected to alter the ALJ's RFC determination. *Colvin on behalf of G.R.K. v. Colvin*, No. 5:15-CV-1371 (GTS), 2017 WL 1167292, at *8 (N.D.N.Y.

Mar. 28, 2017) ("Plaintiff neither identifies a specific record that may have changed their opinions with respect to medical equivalency, nor explains how any such record could be expected to cause these changes in opinion.  These shortcomings alone warrant rejection of Plaintiff's argument.").

As an initial matter, the record contained a cervical MRI from August 2009.  (T. 797.)  The 2009 MRI revealed a small paracentral disc protrusion at C3-4 with no evidence of foraminal stenosis; a moderate spodylitic change at C5-6 with diffuse bulging of the annulus, posterior hypertrophic spurring and uncovertebral joint hypertrophy; and mild right foraminal encroachment.  (*Id.*)  The 2013 cervical MRI was conducted on January 30, 2013, almost four years after Plaintiff's alleged onset date of May 9, 2009 and almost two years after her application for benefits in April of 2011.  The 2013 MRI indicated "[l]arge right paramedian [herniated nucleus pulposus] significantly indenting the ventral aspect of the cervical cord as well as flattening the cervical cord" at the C3-4 level.  (T. 957.)

The additional treatment notations provided by Plaintiff after Dr. Junejo's review provide no basis for concluding that they may have altered his opinion or the ALJ's ultimate determination.  To be sure, examinations of Plaintiff's cervical spine revealed multiple cervical myofascial trigger points.  (T. 840, 844.)  Examinations also revealed "decreased passive range of motion of the cervical spine."  (T. 851, 855.)  Such findings were not inconsistent or contrary to Dr. Rabinowitz's examination findings.  Further, the additional records did not contain any specific functional limitations and notations indicated Plaintiff's pain was relieved by "rest" and her current pain regimen.  (T. 838,

849.)  Notations also indicated that cervical stiffness was "partially relieved" with medications.  (T. 872.)

Plaintiff also asserts that Dr. Junejo's opinion only addressed her lumbar back impairment and failed to provide an opinion regarding her cervical impairment which was supported by the 2013 MRI and pain management records.  (Dkt. No. 23 at 15-16 [Pl.'s Mem. of Law].)  However, Dr. Junejo's statement indicated Plaintiff suffered from "7240 - DDD (Disorders of Back – Discogenic and Degenerative)."  (T. 200.) Impairment code 7240 refers to disorders of the back and does not differentiate between lumbar, thoracic, or cervical spine.  POMS DI 26510.015.  Further, Dr. Junejo stated in his narrative that he relied on Dr. Rabinowitz cervical range of motion examination and findings.  (T. 201.)  Therefore, contrary to Plaintiff's assertion, Dr. Junejo took into consideration Plaintiff's cervical spine impairment in formulating her opinion.

Overall, the mere addition of medical records after a State agency medical examiner's review does not render the examiner's opinion invalid.  To be sure, the 2013 MRI described Plaintiff's cervical protrusion at C3-4 as "large," as compared to "small" in 2009.  However, Plaintiff fails to specify how the MRI or additional treatment notations were inconsistent with Dr. Junejo's findings or would alter the ALJ's determination.  The evidence received after Dr. Junejo's review did not contain any evidence of additional limitations.  Indeed, treatment notations throughout Plaintiff's course of care contained similar findings on examination and a continued course of treatment.

Plaintiff also argues that the ALJ erred in affording "some" weight to Dr. Rabinowitz's opinion because he did not provide a medical source statement and his

findings were "vague."  (Dkt. No. 23 at 16-17 [Pl.'s Mem. of Law].)  The ALJ properly afforded Dr. Rabinowitz's findings "some weight."  (T. 67.)

As an initial matter, Dr. Rabinowitz did not provide a medical source statement. (T. 817-823.)  Because he did not provide an opinion, that opinion cannot be deemed too vague upon which to base an RFC determination.  *See Curry v. Apfel,* 209 F.3d 117, 123 (2d Cir. 2000), *superseded by statute on other grounds; see Selian v. Astrue,* 708 F.3d 409, 421 (2d Cir. 2013) (consultative examiner's opinion was "remarkably vague" and meaning was left to the ALJ's "sheer speculation").  Further, the ALJ took Dr. Rabinowitz's findings into consideration; however, he provided the findings only "some weight."  (T. 67.)

Here, Dr. Rabinowitz performed a thorough physical examination of Plaintiff, including a range of motion report.  (T. 817-823.)  Although Dr. Rabinowitz did not provide functional limitations based on his examination, Dr. Junejo reviewed his examination and findings and provided specific limitations based on Dr. Rabinowitz's exam, thus providing definition to Dr. Rabinowitz's findings.

The ALJ did not err in his assessment of Dr. Thakur's statement that Plaintiff was "totally temporarily disabled."  (T. 66.)  The ultimate finding of whether a plaintiff is disabled and cannot work is "reserved to the Commissioner."  20 C.F.R. § 416.927(d). "That means that the Social Security Administration considers the data that physicians provide but draws its own conclusions as to whether those data indicate disability.  A treating physician's statement that the claimant is disabled cannot itself be determinative."  *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999); *see Taylor v. Barnhart*,

83 F. App'x 347, 349 (2d Cir. 2003).  Therefore, the ALJ did not err in his assessment of

Dr. Thakur's statement that Plaintiff was disabled.

Plaintiff's contention that the ALJ's physical RFC determination was not based on

a medical opinion, but on his own lay interpretation of the record, is without merit.  (Dkt.

No. 23 at 17-18 [Pl.'s Mem. of Law].)  As outline herein, the ALJ properly relied on the

medical source opinion of Dr. Junejo.  Although additional medical records were

submitted after Dr. Junejo reviewed the record, Plaintiff failed to show that the additional

records contained information that was contrary to Dr. Junejo's findings or the ALJ's

ultimate RFC determination.  Therefore, for the reasons stated herein, it is

recommended that the ALJ's physical RFC determination be upheld.

### ii.)    Mental RFC Determination

On February 15, 2013, Jeanne Shapiro, Ph.D. performed a consultative

psychiatric evaluation, provided a medical source statement, and completed a "Medical

Source Statement of Ability to do Work-Related Activities (Mental)" form.  (T. 941-948.)

On examination, Dr. Shapiro observed Plaintiff's appearance was normal; her

speech was intelligible and fluent; her thought processes were coherent and goal

directed; her affect was relatively flat; her mood was relatively neutral; her attention and

concentration skills were "mildly impaired" and it was "difficult to note what to attribute"

that to; her recent and remote memory skills were grossly intact; her cognitive

functioning was in the "low average range"; and her insight and judgment were fair.  (T.

943.)

In a medical source statement, Dr. Schapiro opined that Plaintiff appeared

capable of following and understanding simple instructions and directions, and

performing simple and complex tasks independently.  (T. 944.)  She opined Plaintiff

"may have" difficulty consistently maintaining attention and concentration; she was able

to maintain a regular schedule and learn new tasks; she could make appropriate

decisions; and she could appropriately deal with stress.  (*Id.*)

In the work activities form, Dr. Shapiro opined Plaintiff had no limitation in her

ability to: understand and remember simple work instructions; make judgments on

simple work-related instructions; understand and remember complex instructions; and

respond appropriately to usual work situations and to changes in a routine work setting.

(T. 946-947.)  Dr. Shapiro opined Plaintiff had a mild limitation in her ability to: carry out

simple instructions and make judgments on complex work-related decisions.  (T. 946.)[3]

She opined Plaintiff had a moderate limitation in her ability to carry out complex

instructions.  (*Id.*)  Dr. Shapiro opined Plaintiff had "mild to moderate" limitations in her

ability to: interact appropriately with the public; interact appropriately with supervisors;

and interact appropriately with co-workers.  (T. 947.)

In formulating his mental RFC determination, the ALJ afforded Dr. Shapiro's

opinion "significant weight."  (T. 68.)  Plaintiff argues that the ALJ failed to properly

incorporate Dr. Shapiro's opinion because the RFC determination failed to account for

her determination that Plaintiff had mild to moderate limitations in her ability to interact

with the public, supervisors and co-workers.  (Dkt. No. 23 at 18-20 [Pl.'s Mem. of Law].)

The ALJ's mental RFC determination was consistent with Dr. Shapiro's opinion

that Plaintiff had mild to moderate limitations in her ability to interact with others

---

[3]       Mild was defined as "a slight limitations . . but the individual can generally function well."
(T. 946.)  Moderate was defined as "more than a slight limitation . . . but the individual is still able to
function satisfactorily."  (*Id.*)

because even a finding of moderate limitations in social functioning does not preclude the ability to perform unskilled work.

The Court of Appeals for the Second Circuit has held that moderate limitations in work related functioning does not significantly limit, and thus prevent, a plaintiff from performing unskilled work. *Zabala v. Astrue*, 595 F.3d 402, 410 (2d Cir. 2010) ("None of the clinicians who examined [plaintiff] indicated that she had anything more than moderate limitations in her work-related functioning, and most reported less severe limitations."); *see Whipple v. Astrue*, 479 F. App'x. 367, 370 (2d Cir. 2012) (consultative examiners' findings that plaintiff's depression caused moderate limitations in social functioning ultimately supported the ALJ's determination that plaintiff was capable of performing work that involved simple tasks and allowed for a low-stress environment); *Saxon v. Colvin*, No. 13-CV-165, 2015 WL 3937206, at *6 (W.D.N.Y. June 26, 2015) ("The ALJ considered the functional limitations suggested by the medical evidence, including plaintiff's moderate limitation in the ability to learn new tasks, perform complex tasks, make appropriate decisions, relate adequately with others, and deal with stress. These limitations are incorporated into the RFC, which limits plaintiff to simple routine tasks in a low stress, low contact environment.").  Therefore, because even a moderate limitation in social functioning would not preclude the demands of unskilled work, the ALJ's RFC determination that Plaintiff could frequently interact with others was not inconsistent with Dr. Shapiro's opinion that Plaintiff had "mild to moderate" limitations in this area.

Indeed, the ALJ's RFC determination was consistent with Dr. Shapiro's opinion as well as Plaintiff's testimony that she was capable of interacting with others and used

a computer program, Skype, to communicate with family.  (T. 65-66.)  Therefore, it is

recommended that the ALJ's mental RFC determination be upheld.

### B.  The ALJ's Step Five Determination

The Commissioner bears the burden at step five to prove that there are jobs that

exist in significant number in the national economy that Plaintiff can perform.  20 C.F.R.

§ 416.920(g).  Plaintiff contends that the Commission did not meet this burden because

the jobs numbers the ALJ relied on for the VE's suggested positions of document

preparer (DOT # 249.587-018), mailroom clerk (DOT # 209.687-026), and marking clerk

(DOT# 209.587-034) were numbers for occupational classifications and not for a

specific DOT title at a specific exertional level.  (Dkt. No. 23 at 20-21 [Pl.'s Mem. of

Law].)  Plaintiff argues the issue is not whether a precise number of jobs could be

identified, but whether "any relevant information" was provided for a step five

determination.  (*Id.* at 21.)  The issue is whether a VE's testimony amounts to

substantial evidence where the VE identifies job numbers set forth in a general DOT

occupational group, but does not identify the number of jobs attributable to the specific

jobs tiles.

Courts in this district have remanded similar cases; however, not every case has

warranted remand.  *See Walker v. Colvin*, No. 3:15-CV-0465 (CFH), 2016 WL 4768806

(Sept. 13, 2016) (collecting case).  "Courts do not require vocational experts to have

and employ precise data-matching algorithms for associating Census Code, SOC-

based or similar employment numbers to DOT-based job types because DOT-specific

job numbers simply do not exist."  *Vandermark v. Colvin*, No. 3:13-CV-1467, 2015 WL

1097391, *16 (N.D.N.Y. Mar. 11, 2015).

> Courts balk, however, when vocational experts provide incidence
> testimony based on broad occupation groupings without accounting for the
> fact that such groupings include more jobs that [sic] a particular claimant
> can perform, without adjusting those incidence numbers accordingly or
> when they otherwise inject meaningful uncertainty as to how adjustments
> are made.

*Id*; *see also Marvin v. Colvin*, No. 3:12-CV-1779, 2014 WL 1293509, *10 (N.D.N.Y. Mar.

31, 2014) (collecting authority); *cf. Kennedy v. Astrue*, 343 F. App'x. 719, 722 (2d Cir.

2009) (finding that, "although the vocational expert acknowledged that the data on

which she relied ... also encompassed approximately 59 other DOT titles, viewed in

context, it is apparent that the expert arrived at her estimated figures ... by discounting

from the total numbers for all 60 DOT titles").

At the hearing the ALJ asked the VE if she had access to numbers in the national

economy for the specific job titles as defined in the DOT.  (T. 176.)  The VE testified that

the numbers she provided contained "a lot of the titles grouped together."  (*Id.*)  At the

hearing the VE testified that the mailroom clerk position was composed of only mail

clerks.  (T. 177.)

Plaintiff's counsel asked the VE if the mailroom clerk position was an

independent occupational group or if it encompassed other occupations.  (T. 179.)  The

VE stated that the mail clerk position was "specific to mailroom positions."  (T. 180.)

The VE followed with "that's even for separate titles."  (T. 180.)[4]

---

[4]    Q [attorney]:    Okay.  And so the mailroom clerk job is an occupational group of its own, or
you just happen to have the numbers? I'm not following that.
             A [VE]:              No, the mailroom clerk is specific to mailroom positions.
             Q[attorney]:      Okay.
             A [VE]:              So that's even for separate titles.
(T. 180.)

Defendant asserts that Plaintiff misread the VE testimony and here the VE testified that the number of positions available under mailroom clerk, unlike document preparer and marking clerk, was not for an occupational group.  (Dkt. No. 26 at 21-22 [Def.'s Mem. of Law].)  In response, Plaintiff argues the VE testified the job of mailroom clerk did include multiple job titles.  (Dkt. No. 29 at 4-5 [Pl.'s Reply Mem. of Law].)

Here, any error the ALJ may have made in his reliance on the VE's testimony was harmless because the ALJ properly concluded that, in the alternative, Plaintiff was "not disabled" within the framework of the medical-vocational rules (commonly called "the Grids").  (T. 70-71.)

In his step five analysis, the ALJ thoroughly discussed the VE testimony.  (T. 69-70.)  The ALJ acknowledged that the VE testified that the number of positions identified applied to occupational groups and not the specific job title.  (T. 70.)  The ALJ determined that in the VE's professional opinion that significant number of jobs existed for the positions provided.  (*Id.*)  The ALJ proceeded with his analysis and determined that Plaintiff was not disabled under the Grids.  (*Id.*)

The Second Circuit has explained that the ALJ may not solely rely on the Grids if a non-exertional limitation "has any more than a 'negligible' impact on a claimant's ability to perform the full range of work."  *Selian,* 708 F.3d at 421 (quoting *Zabala,* 595 F.3d at 411).  A non-exertional impairment is non-negligible "when it ... so narrows a claimant's possible range of work as to deprive him of a meaningful employment opportunity."  *Zabala,* 595 F.3d at 411.  Whether VE testimony is required must be determined on a "case-by-case basis."  *Bapp* 802 F.2d at 605-606.  Further, "the mere

Case 5:15-cv-00242-GTS-WBC    Document 31    Filed 09/25/17    Page 20 of 24

existence of a non-exertional impairment does not automatically require the production of a vocational expert nor preclude reliance on the [Grids]."  *Id.* at 603.

As outlined by the ALJ, Plaintiff's non-exertional limitations, including her ability to occasionally perform postural movements, limitation to unskilled work, and need to avoid concentrated exposure to respiratory irritants, did not have a significant effect on the occupational work base for light work.  (T. 71.)

Plaintiff's mental RFC would not preclude her from performing the basic mental demands of unskilled work.  Basic mental work activities include the ability to: understand, carry out, and remember simple instructions; use judgment; respond appropriately to supervision, co-workers and usual work situations; and deal with changes in a routine work setting. 20 C.F.R. § 416.921(b)(3)-(6), *see* also SSR 85-15 (S.S.A. 1985).  Under SSRs 83-14 and 85-15, a limitation in climbing and balancing would not significantly impact work at any exertional level; kneeling and crawling limitations do not have a significant impact on work; stooping is only occasionally required at the light exertional level; crouching is not required at all at the light exertional level.  *See* SSR 83-14, 1983 WL 31254; *see* SSR 85-15, 1985 WL 56857.  And lastly, the need to avoid "concentrated" exposure to respiratory irritants has only a minimal impact on Plaintiff's ability to perform the range of light work.  See *Pavia v. Colvin*, No. 6:14-CV-06379, 2015 WL 4644537, at *6 (W.D.N.Y. Aug. 4, 2015) (the need to avoid concentrated exposure to respiratory irritants has only a minimal impact on plaintiff's ability to perform the range work); SSR 85-15, 1985 WL 56857, at *8.  Therefore, it is recommended that the ALJ's step five determination be upheld because the ALJ

20

properly concluded that Plaintiff was not disabled based on VE testimony and the framework of the Grids.

### C. Evidence Submitted to the AC

"[N]ew evidence submitted to the [AC] following the ALJ's decision becomes part of the administrative record for judicial review when the [AC] denies review of the ALJ's decision." *Perez v. Chater,* 77 F.3d 41, 45 (2d Cir.1996). "The only limitations stated in [20 C.F.R. § 416.1470(b) ] are that the evidence must be new and material and that it must relate to the period on or before the ALJ's decision." *Id.*

Once evidence is added to the record, the AC must then consider the entire record, including the new evidence, and review a case if the "administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record." 20 C.F.R. § 404.970(b). If the AC denies review of a case, the ALJ's decision, and not the AC's decision, is the final agency decision. *See Perez,* 77 F.3d at 44. When the AC denies review in a case, the review focuses on the ALJ's decision. *Lesterhuis v. Colvin,* 805 F.3d 83, 87 (2d Cir. 2015); *see* 42 U.S.C. § 405(g) ("Any individual, after any *final decision* of the Commissioner ..., may obtain a review of such decision by a civil action...." (emphasis added)).

A district court's review is based on the entire administrative record, including any new evidence submitted to the AC following the ALJ's decision. *See Perez,* 77 F.3d at 45. Thus, as in this case, when the AC denies review after considering new evidence, the court "simply review[s] the entire administrative record, which includes the new evidence, and determine[s], as in every case, whether there is substantial evidence to support the decision of the [Commissioner]." *Id.* at 46; *Lesterhuis,* 805 F.3d 87.

Plaintiff argues that the AC erred in failing to remand the matter to the ALJ based on new evidence provided by Dr. Thakur.  (Dkt. No. 23 at 11-14 [Pl.'s Mem. of Law].)  Plaintiff asserts the AC erred because they provided no comment regarding Dr. Thakur's records although other medical evidence was specifically rejected as not relevant.  (*Id.* at 11.)

The Second Circuit in *Lesterhuis* clearly stated that when new evidence is submitted to the AC and the AC denies review, the reviewing court's role is to review the entire administrative record, including the new evidence, and determine whether substantial evidence supported the Commissioner's final decision.  *Lesterhuis*, 805 F.3d 87.  Therefore, this Court will review the ALJ's determination, not the AC's determination, in light of the new evidence as directed by *Lesterhuis*.  *See Pelow v. Colvin*, No. 6:14-CV-06529, 2015 WL 8516555, at *3 (W.D.N.Y. Dec. 11, 2015) ("This Court must thus determine whether substantial evidence supports the ALJ's decision, when the new evidence from [plaintiff] is included in the administrative record.); *Ryder v. Colvin*, No. 1:15-CV-00241, 2015 WL 9077628, at *4 (W.D.N.Y. Dec. 16, 2015) ("This Court must thus determine whether substantial evidence supports the ALJ's decision, when the new evidence is included in the administrative record.  Because the ALJ's decision was the final agency decision, the Court will not address plaintiff's arguments regarding the Appeals Council's alleged errors in considering the new evidence.").

The Second Circuit has held that the AC did not err in refusing review based on new evidence because the new evidence did not alter the weight of the evidence so dramatically as to require the AC to take the case.  *Bushey v. Colvin*, 552 F. App'x. 97, 98 (2d Cir. Jan. 29, 2014) ("We do not believe that the Appeals Council erred by

refusing to review the ALJ's decision in light of the new evidence that *Bushey* submitted to that body.  The Appeals Council had substantial evidence supporting its decision to decline review, as the new evidence that *Bushey* presented did not alter the weight of the evidence so dramatically as to require the Appeals Council to take the case.").

Accordingly, the issue before the Court is whether Dr. Thakur's operative report altered the weight of the evidence before the ALJ so dramatically as to require the AC to take the case.  This Court finds that it did not and recommends that the ALJ's determination be upheld.

On August 20, 2013, one month after the ALJ's determination, Dr. Thakur completed an operative report.  (T. 1009-1012.)  Therein, Dr. Thakur indicated Plaintiff's preoperative and postoperative diagnosis of cervical myelopathy with stenosis primarily at C3-4 and congenital stenosis between C3 and C6.  (T. 1009.)  The remainder of the report outlines the procedure performed.  (T. 1009-1012.)

As stated by Defendant, the operative report was not a medical opinion that shed any light on Plaintiff's condition, but merely contained additional information of how Dr. Thakur performed Plaintiff's surgery.  (Dkt. No. 26 at 8 [Def.'s Mem. of Law].)  The operative note did not contain an examination or treatment notations nor any source statement regarding Plaintiff's functional ability.  *See Haye v. Comm'r of Soc. Sec.*, No. 1:15-CV-0363 (GTS/WBC), 2016 WL 4402256, at *4 (N.D.N.Y. July 26, 2016), *report and recommendation adopted,* No. 1:15-CV-0363 (GTS/WBC), 2016 WL 4402026 (N.D.N.Y. Aug. 18, 2016).  In addition, the record contained sufficient information upon which the ALJ could base an RFC determination and the ALJ was aware that a surgery was planned.  (T. 147-148.)  Overall, nothing in Dr. Thakur's operative note was

contrary to the ALJ's RFC determination.  Therefore, is it recommended that the determination of the Commissioner be upheld.

**ACCORDINGLY**, based on the findings above, it is

      **RECOMMENDED**, that the Commissioner's decision be **AFFIRMED**, and the Plaintiff's complaint **DISMISSED.**

      Pursuant to 28 U.S.C. § 636 (b)(1) and Local Rule 72.1(c), the parties have **FOURTEEN (14) DAYS** within which to file written objections to the foregoing report. Any objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636 (b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated:    September 25, 2017

                                    William B. Mitchell Carter
                                    U.S. Magistrate Judge